UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BEAU JAMES ELLENBECKER,

        Plaintiff,

    v.                                                               Case No. 20-C-1231

JIMMY JOHN'S, et al.,

        Defendants.

## ORDER FOR SUMMARY DISMISSAL

On August 10, 2020, Plaintiff Beau James Ellenbecker filed a complaint against Defendant Jimmy John's. The court dismissed the complaint for failure to state a claim upon which relief could be granted on August 19, 2020, and directed Plaintiff to file an amended complaint by September 17, 2020. On September 18, 2020, Plaintiff filed a "response" to the screening order. The court allowed Plaintiff a final opportunity to file an amended complaint by October 21, 2020, and warned that failure to do so may result in dismissal of the action. Plaintiff failed to comply with that order, so the court dismissed the case without prejudice for failing to diligently purse the action on October 26, 2020. Plaintiff subsequently submitted an amended complaint, which was signed on October 19, 2020, and a motion for relief from judgment. In his motion, Plaintiff explains that any delay in the court receiving his filings was caused by the COVID-19 pandemic and the post office. The court will reopen Plaintiff's case, vacate the judgment, and screen the amended complaint.

### PRELIMINARY MATTERS

As an initial matter, the court will address Plaintiff's motions for assistance in obtaining representation. Civil litigants do not have a constitutional or statutory right to appointed counsel.

*Jackson v. Cty. of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) ("We begin with the fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court."). Yet, district courts have discretion to recruit attorneys to represent indigent parties in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1).

Generally, where the plaintiff is not in custody, it is assumed that he is able to obtain representation of a meritorious case on his own. It is the rare individual who agrees to pay an attorney at an hourly rate to represent him in an employment discrimination suit. Attorneys who specialize in that area of law handle such cases on a contingency fee basis, realizing that if they prevail, the defendant pays their fees and costs. The fact that a person cannot find an attorney to take his case is usually a sign that the case has little merit. *See Cooper v. Sargenti Co.*, 877 F.2d 170 (2d Cir. 1989). If that is the case, it would be unreasonable for the court to use its authority to recruit counsel.

Even where the plaintiff is in custody, "deciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself.'" *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)). But these are not the only factors that the court may consider in deciding whether to undertake the effort to recruit counsel. The court must also decide on a case-by-case basis whether a particular plaintiff should benefit from the limited resources of lawyers willing to represent a *pro*

*se* litigant at the court's request. *See McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) ("Nothing in *Pruitt* or our other cases on recruiting counsel prohibits a judge from using available information and the judge's experience to assess the importance and potential merits of the case and to assign priority accordingly.").

Although Plaintiff has made reasonable efforts to find a lawyer on his own, he has failed to demonstrate that he is incapable of litigating this case himself. He has not alleged that he is incompetent and has acknowledged that "intellectually [he is] more than capable of handling this case." Dkt. No. 13 at 3. There is nothing in the record to suggest that Plaintiff does not have the same competence to represent himself as the vast number of other *pro se* litigants who cannot afford to hire an attorney and are unable to convince one to take their case on a contingent fee basis. Prison inmates are not free to seek counsel on their own and are limited in conducting their own research. From what the court can tell, Plaintiff suffers none of these defects. He has been able to present his claims of discrimination and retaliation to the court and has thus far revealed an ability to litigate on his own behalf. In light of Plaintiff's abilities and the nature of his claims, the court concludes that this case does not warrant court-recruited counsel at this time. Therefore, Plaintiff's motions to recruit counsel (Dkt. Nos. 11–13) are denied without prejudice.

### SCREENING OF THE AMENDED COMPLAINT

The court is authorized to screen the complaint to "save everyone time and legal expense." *See Hoskins v. Poelstra*, 230 F.3d 761, 763 (7th Cir. 2003). In screening a complaint, I must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient

to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT

Plaintiff alleges he worked at Jimmy John's in Weston, Wisconsin in March 2018. At the time he was hired, Dan Pietschmann was the Area Manager, Cameron Beeney was the General Manager, Chad Bacon was the First Assistant Manager, Karyn Beeney was the Second Assistant Manager, and Sammy Payne was a delivery driver. Plaintiff claims that, from March 2018 through May 2018, Bacon violated his rights by sexually harassing customers, co-workers, and Plaintiff by making sexually explicit comments and having a sexually explicit demeanor at work. Plaintiff alleges Bacon "attacked" his co-workers' sexual orientation or bodies, primarily focusing on

4

sexual anatomy. Dkt. No. 10 at 4. Plaintiff raised his concerns about Bacon's inappropriate actions with management but was told that Bacon was "harmless." *Id.*

Around May 2018, Plaintiff went to Florida for a family emergency. When he returned in July 2018, Sammy Payne was the General Manager. Plaintiff continued to complain about Bacon's sexually explicit comments. In August 2018, Bacon was terminated for his attendance issues. At that point, Plaintiff was offered a management position. Plaintiff alleges that the store was not making any money at the time he accepted the position. On September 18, 2020, Payne advised Plaintiff that "Brad and Brian want you fired." *Id.* at 6. Plaintiff and Payne disputed what an appropriate business model for the restaurant was. Plaintiff alleges Payne was verbally aggressive, seemed to think Plaintiff had "no clue what [he] was talking about," and advised that he was going to run his store as he saw fit. *Id.* As Plaintiff left the cooler to begin slicing meat, he told Payne, "You know that after that conversation, I'm going to have to file a sexual harassment lawsuit, right?" *Id.* After Plaintiff began slicing meat, Plaintiff and Payne had another heated conversation about the "poor management and careless owners." *Id.* Payne advised that he was going home. Payne left the store but returned an hour later and fired Plaintiff.

### THE COURT'S ANALYSIS

Plaintiff asserts claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, against his former employer, Jimmy John's, and Cameron Beeney, Sammy Payne, Chad Bacon, and Karyn Beeney, Jimmy John's employees. Title VII prohibits an employer from discriminating against an employee on the basis of the employee's race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2(a)(1). It only allows individuals to bring suits against their employer, not its employees. *EEOC v. AIC Sec.*

5

*Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995). Therefore, Plaintiff may only proceed on his Title VII claims against Jimmy John's.

To state a sexual harassment claim under Title VII, Plaintiff must allege "(1) [his] work environment was objectively and subjectively offensive, (2) the harassment [he] complained of was based on [his] gender, (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive work environment, and (4) there is a basis for employer liability." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018). Plaintiff's amended complaint suffers from the same defects as his original. Like the original complaint, Plaintiff's amended complaint only alleges that Bacon made sexually explicit comments to customers and co-workers; it does not contain allegations that Bacon made any sexually explicit comments to Plaintiff. "Title VII is not directed against unpleasantness per se but only . . . against discrimination in the conditions of employment." *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994) (citation omitted). In other words, "while there are still people in this country, male as well as female, who are deeply offended by dirty words, employers are not under a legal duty enforceable by suits under Title VII to purify the language of the workplace." *Id.* Plaintiff's amended complaint contains no allegations from which the court can infer that Plaintiff was subjected to harassing conduct because of his gender. Therefore, Plaintiff has failed to state a claim of sexual harassment.

Plaintiff also asserts that Payne retaliated against him by terminating Plaintiff's employment after he advised Payne that he intended to file a sexual harassment lawsuit. To sufficiently plead a retaliation claim, a plaintiff must allege that he "'engaged in statutorily protected activity' and suffered an adverse action 'as a result of that activity.'" *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017) (footnote omitted) (quoting *Huri v. Office of the Chief Judge of*

*the Circuit Court of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015)). Title VII protects an employee who has opposed any practice made an unlawful employment practice under Title VII, such as discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, a plaintiff must allege facts that could support the plausible inference that he "reasonably believed in good faith that the practice he opposed violated Title VII." *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). The Seventh Circuit has recognized that, "[i]f a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Hamner v. St. Vincent Hosp. & Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir. 2000), *overruled on other grounds by Hively v. Ivy Tech Community Coll. of Indiana*, 853 F.3d 339 (7th Cir. 2017) (citation omitted).

Plaintiff's amended complaint does not contain any allegations from which the court can infer that he had a reasonable belief that the conduct he opposed was prohibited by Title VII. Plaintiff only threatened to file a "sexual harassment lawsuit" after Payne advised him that the owners of Jimmy John's wanted to fire Plaintiff and after he got into a heated argument with Payne about the best business model for the restaurant. Plaintiff's belief that he was opposing sexual harassment was not a reasonable one because he is not a member of a protected class under the statute. Plaintiff's retaliation claim is based on activity that has nothing to do with his sex; he challenges an isolated incident in which Payne raised his voice at Plaintiff during a conversation about what an appropriate business model for the restaurant would be. Any retaliation claim based on Payne's behavior during this conversation is not founded on a reasonable belief that Plaintiff opposed activity prohibited by Title VII. Plaintiff's amended complaint does not contain any

7

allegations that he was retaliated against for any of the reasons outlined in Title VII's anti-retaliation statute. Therefore, Plaintiff's retaliation claim must be dismissed.

Plaintiff has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992). This action is dismissed for failure to state a claim upon which relief may be granted.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for relief (Dkt. No. 12) is **GRANTED**. The judgment previously entered in this case (Dkt. No. 9) is **VACATED** and the case is reopened.

**IT IS FURTHER ORDERED** that Plaintiff's motions to recruit counsel (Dkt. Nos. 11–13) are **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this 17th day of November, 2020.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge